

The Omni
333 Earle Ovington Blvd, Suite 901
Uniondale, New York 11553
516.880.8484

**Roy W. Breitenbach**
Member
Direct: 516.880.8378
Mobile: 516.382.5126
rbreitenbach@harrisbeachmurtha.com

June 5, 2026

The Hon. Sanket J. Bulsara
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

RE:    *Neurological Surgery v. Cigna*, No. 26-cv-2539-SJB-ARL

Dear Judge Bulsara:

Plaintiff submits this response to Defendants' request for a pre-motion conference to discuss moving to dismiss the Complaint (ECF 18), This proposed motion lacks merit for the reasons below.

A Long Island-based neurosurgery practice, Plaintiff provided medically necessary surgical services to enrollees of health plans administered by Defendants. (Compl. ¶1.) Plaintiff is not a participating provider in any of these health plans. (Compl. ¶17.) Accordingly, the No Surprises Act (NSA), 42 U.S.C. § 300gg-111, applies to Plaintiff's efforts to seek reimbursement from Defendants for the services. Under the NSA, Defendants unilaterally decide the amount to reimburse Plaintiff for its services. *See* 42 U.S.C. §§ 300gg-111(a)(1)(iv)(a) (emergency services) and 300gg-111((b)(1)(C) (non-emergency services). If dissatisfied with this reimbursement, Plaintiff can seek independent dispute resolution (IDR) under the NSA. *Id.* § 300gg-111(c)(2).

There are 45 reimbursement claims at issue, involving 29 patients. (Compl, ¶¶ 1-2.) In all these claims, Plaintiff was dissatisfied with Defendants' reimbursement and began NSA IDR proceedings. In each claim, the IDR entity found for Plaintiff, awarding it additional reimbursement. (Compl. ¶44.) Defendants had 30 days to pay the additional reimbursement. 42 U.S.C. § 300gg-111(c)(6). For all 45 claims, the 30-day payment deadline has long passed without Defendants paying the additional reimbursement. (Compl. ¶44.) Defendants never lodged any of the limited objections that the NSA permits to challenge IDR determinations, nor have they invoked the limited judicial review provided by the NSA to vacate the awards. (Compl. ¶ 47.) The unpaid, awarded additional reimbursement totals $2,703,693.62. (Compl. ¶118.)

Accordingly, the Amended Complaint asserts six causes of action: (1) confirmation and reduction of the 394 IDR determination awarding Plaintiff additional reimbursement to judgments under *Agag v. Cigna Health & Life Ins. Co.*, No. 3:25-cv-00498 (SRU), 2026 WL 1021213 (D. Conn. Apr. 15, 2026) (Compl. ¶¶ 60-68); (2) breach of contract (Compl. ¶¶ 69-79); (3) specific performance (Compl ¶¶ 80-96); (4) promissory estoppel (Compl, ¶¶ 97-111); (5) unjust enrichment (Compl. ¶¶ 112-20); and (6) unjust enrichment (Compl. ¶¶ 121-27).

Defendants advance two main arguments for dismissal: (1) the purported lack of a private right of action provided by the NSA to enforce its provisions; and (2) Plaintiff's state law claims are an impermissible end run around NSA's lack of a private right of action. These arguments lack merit.

*First*, Defendants' no private right of action argument ignores that Plaintiff bases its first cause of action, for confirmation and reduction of the 45 IDR determinations to judgment, on the *Agag* decision. Faced with a similar fact pattern, *Agag* concluded that a private right of action is not needed for a provider to seek confirmation of an IDR award and reduction of that award to judgment. Judge Underhill explained that "focus on the private right of action question is misplaced. A private right of action is only required when a party seeks to enforce *substantive* rights in federal court, at least when the party seeks a determination of the merits of a particular claim. Here, Agag's motion to confirm asks me to act in a purely ministerial way and enter as a judgment an earlier binding determination that Cigna is obligated to pay Agag a specific sum of money for services covered under the NSA." 2026 WL 1021213, at *9 (emphasis in original; citations omitted). This Court respectfully should follow Judge Underhill's detailed and well-reasoned analysis to find that Plaintiff's first cause of action is not dependent on whether there is a private right of action provided by the NSA.

Further, while Defendants' letter cites various decisions in which courts have concluded that there is no private right of action under the NSA, none of these are binding on this Court. *See Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 90–91 (2d Cir. 2006), *aff'd sub nom. Warner-Lambert Co., LLC v. Kent*, 552 U.S. 440 (2008); *see also Am. Elec. Power Co., Inc. v. Conn.*, 563 U.S. 410, 428 (2011). There are also cases, not cited by Defendants, which *found* a private right of action under the NSA. *See, e.g.*, *PHI Health, LLC v. Optimum Choice, Inc.*, ___ F. Supp. 3d ____, 2026 WL 850453, at *5-*6 (D. Md. Mar. 27, 2026); *Guardian Flight v. Aetna*, No. 3:24-cv-680-MPS, 2025 WL 1399145. *8-*9 (D. Conn. May 14, 2025); *GPS of N.J. M.D., P.C. v. Horizon Blue Cross*, No. 22-6614, 20234 WL 5815821, at *10 (D.N.J. Sept. 8, 2023). The issue of whether there is a private right of action under the NSA is currently before the Second Circuit in *East Coast Advanced Plastic Surg., LLC v. Cigna Health & Life Ins. Co.*, Docket No. 25-2204. This case is scheduled for argument on June 17, 2026.

*Second*, Defendants contend that this Court should dismiss the state law causes of action as an attempted end run around the lack of a private right of action to enforce the NSA. This argument is entirely dependent on whether there is no private right of action to enforce the NSA, which has not yet been decided by the Second Circuit. Regardless, the out-of-circuit case that Defendants cite to support its argument relies on *Astra U.S.A, Inc. v. Santa Clara Cnty*, 563 U.S. 110, 118 (2011). That case, however, involved a contract between the federal government and a pharmaceutical company that incorporated federal pharmacy reimbursement law. The Supreme Court held that a non-party to that contract could not use a state law third party beneficiary theory to sue the pharmaceutical company for not following the federal law, which had no private right of action. *Id.* This is quite different from the situation here where the allegations that the two parties, themselves, entered a contract – or at least a quasi-contractual relationship – based on representations made to each other during the IDR process.

Indeed, this case is like the NY Court of Appeals' decision in *Cox v. NAP Constr. Co.*, 10 N.Y.3d 502 (2008), where after acknowledging that the plaintiff workers' breach of contract claim was based on a construction agreement term the federal Davis-Bacon Act required to be included in the agreement, the Court nevertheless rejected as "flawed" the argument that the breach of contract claim should be dismissed as an impermissible end-run around the Davis-Bacon Act's lack of a private right of action. The Court explained to "say that Congress, in enacting the [David Bacon Act], did not intend to create a federal right of action is not to stay that Congress intended to prohibit, or preempt, state claims. Indeed, while . . . federal statutes will not ordinarily be read to create new federal rights absent an affirmative indication that it was Congress' intention, it is equally clear that Congress will not ordinarily be found to have preempted state law where it has not done expressly. *Id*. at 604. In reaching this decision, the Court of Appeals expressly rejected the Second Circuit's interpretation of New York law in *Grochowski v. Phoenix Constr*., 318 F.3d 80 (2d Cir. 2003), which Defendants rely on. *Cox* agreed with the dissent in *Grochowski*. *See Cox*, 10 N.Y.2d at 604.

For these reasons, Defendants' proposed motion to dismiss is without merit.

Respectfully,

Roy W. Breitenbach

cc:     Matthew J. Aaronson, Esq.

**<u>CERTIFICATION</u>**

I, Roy W. Breitenbach, counsel for Plaintiff Neurological Surgery Practice of Long Island, PLLC, hereby certify that the foregoing Response to Premotion Conference Letter contains 1,262 words, excluding the date, addressee, and RE blocks, in accordance with Local Civil Rule 7.1 and Your Honor's Individual Practices, Paragraph VI.G.1, setting forth a maximum word count of 1750 words.

Dated: June 5, 2026

_____
Roy W. Breitenbach