# Exhibit A

2026 WL 2751786
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

EAST COAST ADVANCED PLASTIC SURGERY, LLC, Marcella Livolsi, Plaintiffs-Appellants,
v.
CIGNA HEALTH AND LIFE INSURANCE COMPANY, Connecticut General Life Insurance Company, MultiPlan, Inc., Defendants-Appellees.

No. 25-2204
|
August Term 2025
|
Argued: June 17, 2026
|
Decided: September 17, 2026

**Synopsis**
**Background:** Out-of-network medical provider and plan participant brought action against health plan administrator, seeking declaratory judgment that administrator violated No Surprises Act (NSA) by failing to pay awards obtained through Act's independent dispute resolution process and that administrator owed award amounts. The United States District Court for the Southern District of New York, Paul A. Engelmayer, J., 2025 WL 2371537, dismissed complaint, and plaintiffs appealed.

The Court of Appeals, Park, Circuit Judge, held that NSA did not contain implied private right of action for out-of-network provider to enforce payment awards, abrogating Guardian Flight LLC v. Aetna Life Ins. Co., 789 F. Supp. 3d 214.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for Failure to State a Claim.

Appeal from the United States District Court for the Southern District of New York No. 25-cv-255 Paul A. Engelmayer, *Judge*.

**Attorneys and Law Firms**

Elizabeth Wolstein (Samuel L. Butt, David J. Goldsmith, on the brief), Schlam Stone & Dolan LLP, New York, NY; Michael B. Wolk, Law Offices of Michael B. Wolk, P.C., New York, NY, for Plaintiffs-Appellants.

Richard W. Nicholson, Jr. (Joshua B. Simon, Warren Haskel, on the brief), McDermott Will & Schulte LLP, New York, NY, for Defendants-Appellees Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company.

Before: Leval and Park, Circuit Judges, and Rakoff, District Judge. *

**Opinion**

Park, Circuit Judge:

***1** The No Surprises Act ("NSA") creates an independent dispute resolution ("IDR") process for payment disputes between health plans and out-of-network providers. One such provider, East Coast Advanced Plastic Surgery, LLC ("ECAPS"), won more than $3 million in IDR awards against health-plan administrator Cigna, which Cigna did not pay. ECAPS brought a federal lawsuit seeking a declaration that Cigna owes it the award amounts and violated the NSA by failing to pay. The district court (Engelmayer, *J.*) dismissed ECAPS's complaint for failure to state a claim, concluding that the NSA does not contain an implied private cause of action.

The text and structure of the NSA make clear that it does not provide a private right of action to enforce payment awards obtained through the NSA's IDR process. Although the NSA gives providers a right to payment from health plans for certain services, it delegates enforcement authority to multiple federal agencies and to states. This statutory scheme reflects Congress's intent that the NSA, including payment of IDR awards, be enforced through administrative action rather than private litigation. We thus affirm the judgment of the district court.

## I. BACKGROUND

A. No Surprises Act

Congress enacted the NSA "to address the issue of patients facing unexpected—and often exceedingly large—medical bills after they received treatment from out-of-network

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

providers." *Neurological Surgery Prac. of Long Island, PLLC v. U.S. Dep't of Health & Hum. Servs.*, 145 F.4th 212, 219 (2d Cir. 2025). Congress was responding to "complaints that patients, and their insurers, were susceptible to receiving 'surprise' bills from providers in circumstances, like emergency room visits or anesthesia administration, where they had no realistic choice of lower-cost in-network providers." *Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 110 F.4th 762, 768 (5th Cir. 2024).

Under the NSA, an out-of-network provider seeking payment for certain "items or services" "furnished to" a patient must "transmit[ ]" a "bill for such items or services" to the patient's "group health plan or health insurance issuer offering group health insurance coverage," rather than billing the patient directly. 29 U.S.C. § 1185e(b)(1); *see id.* § 1185e(a)(1)(C)(iv)(I). The "plan or coverage ... shall send to the provider an initial payment or notice of denial of payment" within 30 days of the transmission. *Id.* § 1185e(b)(1)(C); *see id.* § 1185e(a)(1)(C)(iv)(I). If the provider disagrees with the payment decision, it may "initiate open negotiations" to try to reach agreement on the payment amount. *Id.* § 1185e(c)(1)(A). If the negotiations fail, the provider may "initiate the independent dispute resolution process." *Id.* § 1185e(c)(1)(B).

In the IDR process, the health plan or health insurance issuer and the provider each submit "an offer for a payment amount" to a third-party arbitrator known as a "certified IDR entity." *Id.* § 1185e(c)(4)(F), (5)(B). After considering various factors, the certified IDR entity "select[s] one of the offers submitted ... to be the amount of payment" and notifies the parties "of the offer selected." *Id.* § 1185e(c)(5)(A). The IDR entity's payment "determination ... shall be binding upon the parties involved." *Id.* § 1185e(c)(5)(E)(i). The determination "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of Title 9," which are the provisions of the Federal Arbitration Act ("FAA") setting forth the grounds for vacating an arbitration award. *Id.* § 1185e(c)(5)(E)(i)(II). [1]

***2** The NSA provides that the plan or coverage "shall pay a total plan or coverage payment directly ... to" the out-of-network provider based on a statutory formula. *Id.* § 1185e(b)(1)(D); *see id.* § 1185e(a)(1)(C)(iv)(II). If the amount owed is determined through the IDR process or open negotiations, the "total plan or coverage payment ... shall be made directly to the ... provider ... not later than 30 days after the date on which such determination is made." *Id.* § 1185e(c)(6).

Congress added the NSA to three parts of the U.S. Code, each of which is enforced by a separate federal agency. The NSA amends (1) the Employee Retirement Income Security Act ("ERISA"), which is administered by the Department of Labor ("DOL"), *see id.* § 1185e; No Surprises Act, Pub. L. No. 116-260, div. BB, § 102(b)(1), 134 Stat. 2757, 2772–83 (2020); (2) the Internal Revenue Code, which is implemented by the Department of the Treasury ("Treasury"), *see* I.R.C. § 9816; No Surprises Act § 102(c)(1), 134 Stat. at 2784–95; and (3) the Public Health Service Act, which is enforced by the Department of Health and Human Services ("HHS"), *see* 42 U.S.C. § 300gg-111; No Surprises Act § 102(a)(1), 134 Stat. at 2758–70.

Reflecting its triple codification, the NSA tasks DOL, Treasury, and HHS with establishing the IDR process, creating a process to certify IDR entities, and setting the methodology for determining IDR award amounts. *See* 29 U.S.C. § 1185e(a)(2), (c)(2)(A), (c)(4)(A), (c)(5)(C)(i) (DOL); I.R.C. § 9816(a)(2)(B), (c)(2)(A), (c)(4)(A), (c)(5)(C)(i) (Treasury); 42 U.S.C. § 300gg-111(a)(2)(B), (c)(2)(A), (c)(4)(A), (c)(5)(C)(i) (HHS).

B. Factual Background [2]

Defendants Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company (together, "Cigna") administer private employer-sponsored group health plans, which provide healthcare coverage to employees. As relevant here, Cigna sets the amount of plan funds the plan will pay to reimburse providers for covered services provided to plan members.

Plaintiff ECAPS is a medical practice that offers breast reconstruction surgery to breast cancer patients who have undergone mastectomies. ECAPS is an out-of-network provider that has no contract with Cigna or any health plan to provide medical services to plan subscribers at in-network rates.

Defendant MPI assembles networks of medical providers and sells access to those networks to administrators or insurers of group health plans, including Cigna.

ECAPS entered into a contract with MPI that requires ECAPS to provide medical services to individuals covered by Cigna-administered plans. In exchange, Cigna is obligated to pay

ECAPS a "Contract Rate," defined as 85% of ECAPS's billed charges.

ECAPS provided medical services to members of Cigna-administered plans but, in the "overwhelming majority" of cases, Cigna paid ECAPS far less than the 85% Contract Rate. Joint App'x at 42. ECAPS invoked the IDR process and obtained IDR awards against Cigna in amounts exceeding $3 million. Although the NSA requires payment of IDR awards within 30 days, Cigna has made no payments to ECAPS.

For its part, Cigna claims that ECAPS engaged in fraudulent billing practices, causing Cigna to overpay by $8.5 million for certain ECAPS services. Cigna alleges, for instance, that ECAPS unlawfully billed it for (1) claims for services ECAPS had not sufficiently documented, (2) duplicate claims for the same service, and (3) claims for medically unnecessary services.

C. Procedural History

***3** Cigna sued ECAPS under ERISA, the Declaratory Judgment Act, and Connecticut statutory law and asserted claims for common-law fraud, negligent misrepresentation, unjust enrichment, and conversion. ECAPS then sued Cigna, requesting, among other things, declaratory relief for Cigna's alleged violations of the NSA.[3] ECAPS seeks a judgment under the Declaratory Judgment Act that (1) Cigna violated its "obligation under the NSA to pay IDR determinations obtained by ECAPS within 30 days, by failing to pay any portion of those determinations"; (2) Cigna "owes ECAPS the amounts determined through the IDR process to be owed by Cigna ... to ECAPS"; and (3) "ECAPS is entitled to all necessary and proper relief ..., including but not limited to equitable relief and monetary relief." Joint App'x at 65. The Cigna action and the ECAPS action were designated as related, and each defendant moved to dismiss.

The district court granted Cigna's motion to dismiss ECAPS's complaint for failure to state a claim.[4] The court concluded that the NSA does not contain an express or implied private right of action to enforce IDR awards and that the Declaratory Judgment Act "does not provide an independent cause of action." *E. Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*, Nos. 25 Civ. 255, 25 Civ. 1686, 2025 WL 2371537, at *17–18 (S.D.N.Y. Aug. 14, 2025).

## II. DISCUSSION

A. Legal Framework

We review *de novo* "the district court's grant of defendants' motions to dismiss" for failure to state a claim. *Ricci v. Teamsters Union Loc. 456*, 781 F.3d 25, 26 (2d Cir. 2015). "A decision that a statute does not authorize a private right of action is ... a purely legal ruling, which we review *de novo*." *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 101 (2d Cir. 2022).

"Congress determines who may sue to enforce federal law." *FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*, 608 U.S. 608, 613, 146 S.Ct. 1546, 225 L.Ed.2d 184 (2026). "When Congress creates a private right of action, it usually does so expressly." *Id.* Although the Supreme Court once "stood ready to let" "[p]rivate litigants ... sue to enforce statutes that lack" express private causes of action, it has "since rejected the practice of fashioning rights of action as [it] see[s] fit." *Id.* "That is so because home-grown causes of action are difficult to reconcile with the Constitution's separation of legislative and judicial power." *Cisco Sys., Inc. v. Doe I*, 609 U.S. ––––, 146 S. Ct. 1882, 1890, 225 L.Ed.2d 460 (2026) (cleaned up).

The Supreme Court thus has "strictly curtailed the authority of the courts to recognize implied rights of action." *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011). In *Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), the Court required "that a review of the text and structure of a statute yield a clear manifestation of congressional intent to create a private cause of action before a court can find such a right to be implied." *Jet Blue*, 662 F.3d at 596; *see Sandoval*, 532 U.S. at 286–87, 121 S.Ct. 1511.

Following that approach, we first consider the statute's text and determine "whether the statute uses rights-creating language, meaning language that focuses on the individuals protected rather than the person regulated." *Murphy Med. Assocs., LLC v. Yale Univ.*, 120 F.4th 1107, 1112 (2d Cir. 2024) (cleaned up). "Next, we consider whether the statute's methods of enforcement manifest an intent to create a private remedy, as opposed to empowering agencies to enforce their regulations." *Id.* (cleaned up). In conducting this analysis, we have emphasized repeatedly that "implied rights of action are disfavored." *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 128 (2d Cir. 2020) (cleaned up); *see Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 618 (2d Cir. 2002).

B. Analysis

***4** ECAPS contends that the NSA contains an implied private right of action for an out-of-network provider to enforce payment awards obtained through the IDR process. [5] We disagree. The NSA's text and structure do not "yield a clear manifestation of congressional intent to create a private cause of action" to enforce IDR awards. *Jet Blue*, 662 F.3d at 596. We thus join the Fifth Circuit in holding that the NSA does not imply a private right of action to enforce IDR awards. *See Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 274–77 (5th Cir. 2025).

1. *Text*

The NSA lacks an express private right of action to enforce IDR awards, so "we begin with the presumption that Congress did not intend one." *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007).

The NSA's text does not overcome that presumption. To start, the NSA incorporates the FAA's provision for *vacating* arbitral awards, *see* 29 U.S.C. § 1185e(c)(5)(E)(i)(II) (incorporating 9 U.S.C. § 10(a)), but not for *confirming* them, *see* 9 U.S.C. § 9. By contrast, Congress *has* incorporated the FAA's provision for confirming arbitral awards in other statutes. *See* 5 U.S.C. § 580(c) ("A final award is binding on the parties to the arbitration proceeding, and may be enforced pursuant to sections 9 through 13 of title 9."). The NSA's cross-reference to the FAA's vacatur provision but not its confirmation provision thus strongly suggests that Congress did not intend to create a private right of action to enforce IDR awards. *See Guardian Flight*, 140 F.4th at 276–77. [6]

To be sure, the NSA does use rights-creating language, but that is not conclusive. It states that the plan or coverage "shall pay a total plan or coverage payment directly" to the provider based on a statutory formula. 29 U.S.C. § 1185e(b)(1)(D); *see id.* § 1185e(a)(1)(C)(iv)(II). And when the payment amount is determined through the IDR process, the payment "shall be made directly to the ... provider ... not later than 30 days after the date on which such determination is made." *Id.* § 1185e(c)(6). These shall-pay provisions reflect "the type of rights-creating language that we have previously held may imply a cause of action." *Murphy*, 120 F.4th at 1112.

But it is not enough that Congress uses rights-creating language; it must also manifest an intent to provide for private enforcement. *See, e.g.*, *id.* at 1112–13. So "even where a statute is phrased in ... rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy*.' " *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) (quoting *Sandoval*, 532 U.S. at 286, 121 S.Ct. 1511). The NSA does not manifest an intent to create a private remedy.

2. *Statutory Scheme*

***5** Congress created in the NSA a comprehensive regulatory framework for setting up and enforcing the IDR process. On the front end, Congress tasked three agencies —DOL, Treasury, and HHS—with establishing the IDR process, including the certification of IDR entities and the development of the methodology for determining award amounts. *See* 29 U.S.C. § 1185e(a)(2), (c)(2)(A), (c)(4)(A), (c)(5)(C)(i) (DOL); I.R.C. § 9816(a)(2)(B), (c)(2)(A), (c)(4)(A), (c)(5)(C)(i) (Treasury); 42 U.S.C. § 300gg-111(a)(2)(B), (c)(2)(A), (c)(4)(A), (c)(5)(C)(i) (HHS).

On the back end, Congress designed an interlocking federal and state administrative scheme to enforce the NSA. First, DOL and Treasury have the authority to address NSA violations by private employer-sponsored group health plans. For instance, the Secretary of Labor may bring a "civil action ... to enjoin any act or practice which violates any provision of" Subchapter I of ERISA, which includes the NSA, or "to obtain ... appropriate equitable relief (i) to redress such violations or (ii) to enforce" those provisions, against "any employee benefit plan" that is "established or maintained" "by any [non-governmental] employer engaged in commerce." 29 U.S.C. §§ 1132(a)(5), 1003(a). [7] So DOL may file civil lawsuits against non-compliant private-sector group health plans to enforce compliance with the NSA's IDR process. And Treasury may impose "a tax on any failure of a [non-governmental] group health plan to meet the requirements of chapter 100" of the Internal Revenue Code, which contains the NSA as well. I.R.C. § 4980D(a); *see id.* §§ 9816, 9834. [8] Treasury thus may impose a tax when non-governmental group health plans fail to pay IDR awards within 30 days.

Second, HHS has the authority to respond to NSA violations by state and local governmental group health plans. The Public Health Service Act provides that "any non-Federal governmental plan that is a group health plan ... that fails to meet a provision of ... part D" of Subchapter XXV, which

also houses the NSA, "is subject to a civil money penalty." 42 U.S.C. § 300gg-22(b)(2)(A); *see id.* § 300gg-111. So HHS may impose civil money penalties on state and local governmental group health plans that do not timely pay IDR awards. *See E. Coast Advanced Plastic Surgery*, 2025 WL 2371537, at *17 (observing that the IDR process is "subject to oversight and enforcement by [HHS]").[9]

Finally, the Public Health Service Act permits states to enforce the NSA against health insurance issuers. The Act provides that "each State may require that health insurance issuers that issue, sell, renew, or offer health insurance coverage in the State in the individual or group market meet the requirements of ... part D" of Subchapter XXV "with respect to such issuers." 42 U.S.C. § 300gg-22(a)(1). Congress thus contemplated state enforcement of the NSA, codified in part D, against health insurance issuers.

***6** Taken together, these provisions reflect "Congress's policy choice to enforce the [NSA] through administrative" action, "not a private right of action." *Guardian Flight*, 140 F.4th at 277. "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290, 121 S.Ct. 1511; *see FS Credit*, 608 U.S. at 616–17, 146 S.Ct. 1546 (explaining that the Securities and Exchange Commission's "responsibility for ensuring compliance" with the Investment Company Act, including the agency's power to "investigate and bring enforcement actions in response to violations of" the Act and to " 'bring an action in ... court' for injunctive relief or civil monetary penalties," "supports the conclusion that private parties generally cannot enforce the" Act). Here, Congress expressly provided for DOL and Treasury to enforce IDR awards entered against private employer-sponsored group health plans, for HHS to enforce awards against state and local governmental group health plans, and for states to enforce awards against health insurance issuers. This statutory scheme makes clear that Congress did not intend to authorize private lawsuits to enforce IDR awards.

3. *ECAPS's Other Arguments*

ECAPS raises a host of counterarguments, but none is persuasive. First, ECAPS observes that the NSA itself does not confer enforcement authority on the agencies with jurisdiction over private employer-sponsored group health plans—DOL and Treasury. But Congress had no reason to do so because ERISA and the Internal Revenue Code, each of which the NSA amends, already authorize enforcement by those agencies. *See Murphy*, 120 F.4th at 1112 (declining to imply a private right of action in a statute that "supplements" another statute containing an administrative-enforcement provision); *Jet Blue*, 662 F.3d at 595, 597 (explaining that a general enforcement provision in Title 49, which houses the Air Carrier Access Act, supports the conclusion that the Act does not imply a private cause of action).[10]

Second, ECAPS argues that DOL's efforts to enforce the IDR award provision are minimal. But the relevant question is whether Congress authorizes agency enforcement, not how actively the agency exercises its authority. *See Murphy*, 120 F.4th at 1112 (relying on a statutory provision stating that a subsection "shall be applied by the Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury to group health plans").

Third, ECAPS highlights that the Secretary of the Treasury may waive the tax if the plan's failure to pay IDR awards on time is not due to willful neglect and that, for non-multiemployer plans, the tax is imposed on the employer rather than on the plan. But the fact that an agency may waive enforcement is not evidence of congressional intent to permit a private right of action.[11]

Fourth, ECAPS argues that "Congress's vesting of IDR determinations with 'binding' effect is an[ ] indication of its intent to render them judicially enforceable by providers." Appellants' Br. at 33–34. But this begs the question because the provision making the IDR determination "binding upon the parties involved" says nothing about *who* may enforce it. 29 U.S.C. § 1185e(c)(5)(E)(i)(I).[12]

***7** Fifth, ECAPS's invocation of cases involving the Tucker Act and 42 U.S.C. § 1983 is inapposite. The Tucker Act waives sovereign immunity "for certain damages suits in the Court of Federal Claims" that are premised "on 'other sources of law,' like 'statutes.' " *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 322, 140 S.Ct. 1308, 206 L.Ed.2d 764 (2020). If a statute "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained," it generally suffices "to permit a Tucker Act suit for damages." *Id.* at 322–23, 140 S.Ct. 1308. This case does not involve sovereign immunity, the Tucker Act, or the Act's "money-mandating inquiry," *id.* at 323 n.12, 140 S.Ct. 1308, so the Supreme Court's statement that "[s]tatutory 'shall pay' language often reflects congressional intent to create both a right and a remedy under the Tucker Act" does not control here, *id.* at 324, 140 S.Ct. 1308 (quotation marks omitted).

Moreover, in § 1983 cases, plaintiffs "do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes. Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Gonzaga*, 536 U.S. at 284, 122 S.Ct. 2268 (internal citation omitted). That presumption does not apply where the plaintiff sues under an implied right of action. *See id.*

Sixth, ECAPS contends that declining to imply a private right of action to enforce IDR awards would "render the incorporation of section 10 of the FAA superfluous and absurd," because there would be no reason to provide "grounds for setting aside an award" if "no plan or insurer [could] be compelled to pay an IDR award." Appellants' Br. at 46. We disagree. As explained above, Congress developed a comprehensive administrative scheme for enforcing the NSA. A health plan or insurer may well prefer to seek vacatur of an unfavorable IDR award under § 10 than to ignore the award and risk administrative action. And if a provider believes the IDR process was tainted and resulted in an award it thinks is too low, it may seek vacatur as well.

Finally, ECAPS argues that denying a private enforcement remedy "renders meaningless the entirety of the statutory IDR regime." *Id.* This is incorrect. Agencies may enforce the IDR process, so the absence of a private right of action would not undermine the process. "Congress may have judged it better to have an administrative enforcement mechanism handle most award disputes instead of throwing open the floodgates of litigation." *Guardian Flight*, 140 F.4th at 277.

In short, ECAPS has not shown that "Congress 'affirmatively contemplated' a private right of action to enforce IDR awards." *Id.* We thus conclude that the NSA does not create an implied private right of action to enforce payment awards obtained through the IDR process. [13]

C. Declaratory Judgment Act

ECAPS contends that even if the NSA does not imply a private cause of action to enforce IDR awards, a provider may still seek relief against a health plan under the Declaratory Judgment Act. This claim is meritless.

As the district court correctly explained, the Declaratory Judgment Act "does not create an independent cause of action." *E. Coast Advanced Plastic Surgery*, 2025 WL 2371537, at *18 (quoting *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012)). A "court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993). Without an implied private right of action under the NSA, ECAPS has no other substantive claim of right to relief, so its cause of action for failing to make timely payment of IDR awards cannot proceed.

## III. CONCLUSION

***8** We have considered ECAPS's remaining arguments and find them to be without merit. For the foregoing reasons, we affirm the district court's grant of the motion to dismiss.

**All Citations**

--- F.4th ----, 2026 WL 2751786

## Footnotes

* Judge Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

1 The FAA's grounds for vacatur include "where the award was procured by corruption, fraud, or undue means"; "where there was evident partiality or corruption in the arbitrators"; "where the arbitrators were guilty of ... misbehavior by which the rights of any party have been prejudiced"; and "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

2 “On review of a District Court's decision granting a motion to dismiss, we take as true the facts set forth in the complaint.” *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 245 n.1 (2d Cir. 2018).

3 The second plaintiff in the ECAPS action is Marcella Livolsi, a participant in a Cigna-administered plan who received out-of-network services from ECAPS. ECAPS and Livolsi are represented by the same counsel on appeal, and we refer to both appellants as ECAPS.

4 ECAPS's complaint also named MPI as a defendant, and MPI separately moved to dismiss. The district court simultaneously granted MPI's and Cigna's dismissal motions. MPI, which is represented by Phelps Dunbar LLP, did not file a brief or otherwise participate in this appeal.

5 Whether the NSA implies a private cause of action to enforce IDR awards is an issue that has divided district courts, including in this Circuit. *Compare, e.g.*, *Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214, 229 (D. Conn. 2025) (concluding that “the NSA creates a private cause of action to enforce IDR awards”), *with* *Axis Neuromonitoring, LLC v. Aetna Inc.*, 824 F. Supp. 3d 217, 224 (D. Conn. 2026) (“The Court ... concludes, as have most courts to consider the issue, that the NSA does not create an implied right of action.”).

6 ECAPS contends that Congress did not need to incorporate the FAA's confirmation provision because that provision applies to awards resulting from arbitration agreements rather than from a process mandated by statute. This argument fails because Congress still incorporated FAA § 10, which also applies to awards resulting from arbitration agreements. *See* 9 U.S.C. § 10(b).

7 Subchapter I of ERISA does not apply to any “governmental plan,” which includes any employee benefit plan established or maintained by the federal government or by a state government or subdivision. 29 U.S.C. §§ 1002(32), 1003(b)(1).

8 A “group health plan” under the Internal Revenue Code includes “a plan ... of, or contributed to by, an employer ... to provide health care ... to ... employees.” I.R.C. § 5000(b)(1); *see id.* §§ 4980D(f)(1), 9832(a). The “term ‘employer’ does not include a Federal or other governmental entity.” *Id.* § 5000(d).

9 ECAPS contends that HHS lacks jurisdiction over private employer-sponsored group health plans. But, as noted, DOL and Treasury may take enforcement action when such plans violate the NSA. HHS's authority to enforce the NSA against non-federal governmental group health plans is part of the interlocking administrative enforcement scheme that Congress created in enacting the NSA.

10 Congress enacted ERISA's agency-enforcement provisions in 1974. *See* Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, § 502(a), 88 Stat. 829, 891. It added the tax-penalty provisions to the Internal Revenue Code in 1996. *See* Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, § 402(a), 110 Stat. 1936, 2084–87. These provisions long predate the NSA, which was enacted in 2020.

11 Nor does ECAPS identify any authority stating that agency enforcement authority must exist over the noncomplying entity (here, the plan) as opposed to over a separate entity (here, the employer). In any event, ECAPS concedes that DOL has authority over the private employer-sponsored group health plans themselves.

12 ECAPS cites cases holding that a party may seek judicial enforcement of an arbitral award where the award or the underlying arbitration is “binding.” Appellants' Br. at 34–36. Those cases are inapposite. None of them addresses the NSA. None considers whether a statute implies a private right of action to enforce an

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

arbitration award where the arbitration provisions are subject to administrative enforcement. And several involve arbitration agreements, not a dispute-resolution process created by statute.

13 Cigna contends that the NSA "bars providers from bringing lawsuits to confirm IDR awards." Appellees' Br. at 21 (capitalization omitted). It points to the NSA provision stating that a "determination of a certified IDR entity ... shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of [the FAA]." 29 U.S.C. § 1185e(c)(5)(E)(i). Cigna maintains that the term "judicial review" encompasses "lawsuits seeking to ... confirm or enforce a dispute resolution award." Appellees' Br. at 21 (emphasis omitted); *see* *Guardian Flight*, 140 F.4th at 275–76 (adopting this interpretation). We need not decide this issue. Assuming without deciding that the judicial-review bar does not preclude ECAPS's lawsuit, that fact alone is not "a clear manifestation of congressional intent to create a private cause of action." *Jet Blue*, 662 F.3d at 596.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.